Filed 2/6/26  P. v. Espinoza CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> LUIS VASQUEZ ESPINOZA, <br><br> Defendant and Appellant. | D084544 <br><br><br> (Super. Ct. No. SCS314699) |


APPEAL from a judgment of the Superior Court of San Diego County, Maryann D'Addezio, Judge.  Affirmed.

Jennifer A. Gambale, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Adrian R. Contreras, Daniel Rogers, and Matthew Mulford, Deputy Attorneys General, for Plaintiff and Respondent.


Luis Vasquez Espinoza sexually molested a young relative who child-protective services had placed in the home Espinoza shared with his mother. A jury convicted Espinoza of two counts of orally copulating a child 10 years

old or younger (Pen. Code, § 288.7, subd. (b)) and two counts of committing a forcible lewd act on a child under 14 years old (*id.*, § 288, subd. (b)(1)).  The trial court sentenced Espinoza to 30 years to life in prison plus a determinate 20-year prison term.  On appeal from the judgment, Espinoza argues the trial court abused its discretion by excluding the testimony of a witness who would have impeached the credibility of the victim's mother.  As we explain, this argument is without merit.  Accordingly, the judgment is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

A. *The Prosecution's Case*

In 2018, San Diego Child Welfare Services placed the victim, who was five years old at the time, and the child's four-year-old sibling in the home of their mother's aunt, L.V.  The children lived with L.V. for about two years while their mother, S.T., was in federal custody.  L.V.'s son, Espinoza, who was 23 years old at the time, also lived there.

While they lived in the same home, Espinoza would "bribe" the victim by offering her candy to come to his room.  Espinoza also told the victim not "to tell anyone or else he'd hit [her]."  Espinoza would bend the victim over or tell the child to crouch on her knees and "make [her] suck" his penis through a hole in his boxers.  He penetrated the child's mouth about three or four inches.  The victim testified at trial that it felt "nasty," like a "nasty taste was in [her] mouth."  Espinoza did this more than twice, including once in the night and multiple times during the day.

The victim also testified that Espinoza showed her pornographic videos that involved oral sex and a girl drinking "the white stuff."  Espinoza told the victim that he wanted her " 'to do that,' " and this occurred at least once.  Another time, and possibly more than once, Espinoza called the child into his

room and removed her pants, but not underwear, and put his penis on her butt. He rubbed his penis on the child, who testified it felt "slimy."

After moving back to live with S.T., the victim told her mother about the abuse. The child testified she could not hold it in any longer, and had been wanting to tell her mother for "a long time." She testified it felt "[h]eart-breaking" and "sad" to tell S.T., but that she felt better after telling her mother, who was angry about the abuse.

In July 2020, a police officer received the report that Espinoza molested the victim. As part of the police investigation, S.T. agreed to call Espinoza on a recorded line. During the call, Espinoza admitted the victim "caught" him masturbating to pornography on a tablet. He told S.T. it happened "two times" and he had confessed at church. Espinoza initially denied having sex with the victim or raping her. When S.T. said her daughter accused Espinoza of making the victim "suck [his] dick," he said, "I didn't force her to do anything like that. Like I didn't force her." However, he then said, "I think I manipulated the situation," and he may have been "a fucking idiot."

When S.T. said her daughter did not say he used force, Espinoza again said that he did not force her but that "she did it." He admitted it was a kiss, but also said he did not really remember because he had popped pills and was on "some other shit." When S.T. asked Espinoza how her daughter would know that she did not like the taste of "the white stuff," Espinoza said the child had seen him watching porn while he masturbated. Espinoza also said "the situation ... went the wrong way," it happened twice when the child was clothed, and it "was just rubbing." The recording of the call was played for the jury.

After the call, a social worker conducted a forensic interview with the victim, which was recorded and played for the jury. The victim said that

3

Espinoza "makes me suck his, um, thing on the bottom under his pants," which she did not like. She also said Espinoza told her to "drink the white stuff." He told her several times to suck his penis, or he would spank her. The victim also disclosed that when she was on her knees, Espinoza used his hands to pull her head back and forth to go farther and farther as if she were "almost gonna choke." She said Espinoza sometimes told her to drink the white stuff that came out. She sucked his penis more than three times.

The victim also said that Espinoza showed her videos of women and a girl sucking other men's penises. The victim told the social worker that Espinoza pulled her pants down while her underwear was on and then pushed her "back and forth" and she could feel his penis on her bottom. This also happened more than once, and Espinoza told her not to tell anyone, or he would spank her. During her trial testimony, the victim remembered talking to the social worker, and agreed her memory of the events was better at that time than it was at the time of trial.

The prosecution also presented the testimony of the social worker involved in the victim's placement at L.V. and Espinoza's house. The social worker told the jury that L.V. was difficult to work with. The child-protection agency received three referrals regarding suspicions of abuse during the placement, and the social worker testified the victim had gone to school without underwear and had said during an interview that her aunt told her not to talk to the social workers. Two other social workers interviewed the victim while she stayed with L.V. During the first interview, the victim denied any sexual abuse, and during the second interview she would not answer the questions. The prosecution also introduced expert testimony regarding children who are victims of sexual assault and the delayed disclosure of sexual abuse.

4

Police recovered two iPad tablets during a search of L.V. and Espinoza's home, but did not find any child pornography on the devices.

B. *Defense Case*

The defense called only L.V. to the stand. She testified that she knew S.T., who had multiple children, since she was a girl. L.V. cared for the victim and her sibling for about two years. L.V. testified she once saw the victim's older sister kissing the victim with an open mouth.

DISCUSSION

I

*Additional Background*

Before trial, defense counsel filed a motion that sought to introduce testimony from S.T.'s brother, E.T. At the pretrial hearing, defense counsel explained that E.T. would testify that when S.T. and E.T. were children, S.T. made a false report of molestation to child welfare services to "manipulat[e] their custodial situation with their own parents." Defense counsel argued that this testimony would show S.T. had a motive to tell her daughter to lie so that S.T. could pursue a lawsuit against child welfare services.

The prosecution opposed the motion, asserting the evidence was not sufficiently relevant and should be excluded under Evidence Code section 352 as prejudicial, confusing, and misleading, and because it would unduly prolong the proceedings. The prosecutor noted that E.T. had not seen the victim since her birth, and that his proffered testimony concerned an event over 20 years before.

The court denied the motion, finding S.T.'s admission of lying to her brother when they were children was not relevant, would confuse the issues in the case, mislead the jury, and create a "sideshow" regarding the family's dysfunction.

5

## II

### *Legal Standards & Analysis*

Under Evidence Code section 352, the trial court may exclude evidence " 'if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' " (*People v. Espinoza* (2002) 95 Cal.App.4th 1287, 1309–1310.) "[A] trial court is vested with wide discretion in determining relevance and weighing the prejudicial effect of evidence against its probative value. Evidentiary rulings will not be overturned on appeal in the absence of a clear abuse of that discretion, upon a showing that the trial court's decision was palpably arbitrary, capricious, or patently absurd, and resulted in injury sufficiently grave as to amount to a miscarriage of justice." (*In re Ryan N.* (2001) 92 Cal.App.4th 1359, 1385; see also *People v. Rodriguez* (1999) 20 Cal.4th 1, 9–10.)

In addition, as the Attorney General points out, it does not violate the Constitution to apply ordinary evidentiary rules that exclude evidence. (See *Taylor v. Illinois* (1988) 484 U.S. 400, 410–412; *People v. Cunningham* (2001) 25 Cal.4th 926, 999; *People v. Fudge* (1994) 7 Cal.4th 1075, 1102–1103.) Unless a defendant shows that excluded evidence would have produced a significantly different impression of a witness's credibility, a trial court's exercise of its discretion does not violate the Sixth Amendment. (See *People v. Brown* (2003) 31 Cal.4th 518, 544–546, citing *Delaware v. Van Arsdall* (1986) 475 U.S. 673, 684.) The exclusion of evidence does not violate any right to present a defense where the defendant was not otherwise prohibited from presenting this defense through admissible testimony and evidence. (*People v. Cowan* (2010) 50 Cal.4th 401, 473–474.)

6

Here, the court properly analyzed the proffered testimony under Evidence Code section 352. The court reasonably found E.T.'s testimony was not relevant. Further, the trial court reasonably concluded that defense counsel's stated purpose—to show S.T. had once lied based upon a hearsay admission from two decades earlier—could mislead jurors to reach a conclusion about the victim based on S.T.'s character and conduct. (See Evid. Code, § 1101, subd. (a).) Importantly, S.T.'s decision to contact authorities had no relevance to the jury's determination of whether the victim was abused by Espinoza. Rather, the jury was able to consider the victim's own testimony at trial and during the forensic interview to reach its verdict.

Put simply, Espinoza has not shown the trial court abused its wide discretion by excluding the testimony of E.T. as irrelevant.

DISPOSITION

The judgment is affirmed.

McCONNELL, P. J.

WE CONCUR:


BUCHANAN, J.


CASTILLO, J.

7